The first case for argument is 22-1301, Euclid Market v. United States Very well And, let's see, Mr. Kanzler? Yes, Your Honor  May it please the Court, Hill Counsel, my name is Jay Kanzler and I represent Euclid Market. My client is appealing from the judgment of the United States District Court for the Eastern District of Missouri, which held that my client had engaged in trafficking of Supplemental Nutrition Assistance Benefit or SNAP benefits. In its decision, the District Court held that the market failed to meet its difficult burden of demonstrating every transaction that the USDA showed was likely trafficking was a legitimate transaction. The District Court erred, as a matter of law in that holding, by adopting that legal standard that the store must affirmatively show that every single transaction was legitimate to avoid permanent disqualification from the SNAP program. As I discussed in the briefs, and I'll touch on somewhat here, that standard would be impossible to meet. It could never be met. The correct legal standard is that the Court, or that the Court should adopt, is one of a preponderance of all the evidence. Now, Euclid Market has also raised the issue of whether or not the store owner or the government has the burden of proof. Given that the USDA is the party asserting that the store should be permanently disqualified, it should bear the burden of proof in establishing the violation. But unless the Court has any questions regarding that, I intend to use the remainder of my time on the every transaction versus preponderance of the evidence standard. Counsel, I do have one question. Do any of the cases that place the burden of proof on the store in the post-disqualification proceeding undertake any analysis of whether that comports with due process? I don't believe so, Your Honor. Most of the due process conversation in these cases, and there's relatively few cases, as you find on the food stamp, relate to the due process being met because there's a de novo review by the District Court. Your Honor, I don't know of any. If you do, I'd be happy to— I do not. Okay. I did not come across any. And the reason I'm willing to move on to the next topic is because I agree that most of the circuits have adopted the stores carries the burden. I just believe that's incorrect. Do we have an Eighth Circuit case that touches on that issue? There is an Eighth Circuit case, I think the Haynes case, that says that the store carries the burden of proof. And what is the burden, then, if that's true? What does that case—how does it identify the level of the burden? Now, there is no—I would say there is no published case. The Haynes case is an unpublished case, and it says that the store bears the burden of proof by a preponderance of the evidence. And then, if you go to the next step, prove by a preponderance of the evidence, what? Prove what by a preponderance of the evidence? Well, again, I'm just going to assume that the store carries the burden of proof. The store, then, must prove by a preponderance of the evidence that it was not engaged in trafficking of SNAP benefits. I think what we have is kind of two different cases. What we don't have—and it's probably easier to start with what the law does not require. The law does not require that every transaction identified by the USDA must be proven to be legitimate. The district court needs to take in, under the de novo review, all of the evidence—the register receipts, the invoices, the witness testimony, and, yes, even the USDA algorithm. And then they must decide whether the store trafficked by a preponderance of the evidence. They do not need to find every—as I discussed in the briefs, that is a flawed legal holding that is kind of built up over the years. Relatively few cases, three district court cases, and it is the incorrect holding. Mr. Kanzler?  Mr. Kanzler, let's assume, for purposes of this question, that you're right, that that's not the burden that the statute imposes. What would happen here? It seems to me that the district court sort of came out of the gate with that standard, but then did some— I mean, one could say did an analysis of the type that you're describing and looking at the patterns of the conduct at the store. As a practical matter, where does your argument land you, even if we agree with you on the legal point? Well, where it ends is back to Judge Shelp, so that Judge Shelp can start his legal analysis from the correct legal standard. He may end up, Your Honor—I don't know where Judge Shelp will end up—he may end up holding the same thing. But as this Court has stated several times in lots of different cases, the prudent course is to send the case back to Judge Shelp and have him start from the correct legal standard and then make that analysis. You know, he touched on some things along the way, but he also made it very clear that he didn't do certain things. You know, he did not necessarily judge the credibility of the witnesses. He didn't. He started off and said, hey, you don't have receipts for some of the transactions. Therefore, you can't prove every transaction, which I think is a flawed proposition. But it's, again, getting back to the legal standard, which is incorrect. When we have, like here, a generalized assertion of trafficking, this is not an undercover operation. Ironically, the USDA went in ten separate times to try and catch these folks, and they never did. And then they come back with a generalized proposition saying, you know what? This looks kind of suspicious. Therefore, we will find you have trafficked. Now, prove you didn't. And the biggest thing in this case—and I do dozens of these cases in this area— and the biggest thing that's going on is the prepared food. So they will come in, and the USDA will come in and they'll say, here is a chips and soda convenience store that has a $7 transaction because it's a bag of chips, a candy bar, and a soda. And they will compare that to a prepared food store like Euclid Market that is perfectly legal. The customer comes in, pays for an item. Maybe it's a salad. Maybe it's something cooked. Oftentimes it is chicken wings. They pay for that. If it is cooked or warmed by the store at no cost, that is called prepared food. There is absolutely no question that that is an eligible food item under the SNAP program. Counsel, let me ask you a question about that. The government says in their brief that they disqualified Euclid Market based on EBT patterns consistent with trafficking. But it's my understanding that there were some serious errors made by the USDA as to the size of the store and as to some higher-priced meat items. That is correct. Did that impact the algorithm or the conclusion of the USDA? And if so, what impact does that have on our analysis? So they made many, many mistakes, and this is a repeated problem. And, in fact, this particular inspector has made these mistakes in other cases. If you say this store does not have the capability of processing these large orders, doesn't have the size, doesn't have the stock, if you then start to look at what the inspector said, the inspector said the store was much smaller than it really was. The inspector said it didn't have the storage space that it had. It said that they didn't have shopping carts, which it did. Then when the person making the decision, the program specialist, looks at that and says, okay, we have transactions of this size, but the inspector has said that this is just a tiny little store on a corner that doesn't sell anything but chips and soda. The number one issue, again, we go back to it. Remember, in the inspection reports, they say a can of coffee was the most expensive item on the store's menu. That is false. The number one most expensive item on the store's list of items was $70, give or take, for chicken wings. And there were others, you know, meats and other fishes that were $30 and $40 and $50. If you then, if I get a report and it says the most expensive item is $7, and I look and I see a $100 transaction, then I'm going to, assuming, which they do, they testified, I assume this is true. If they assume that's true, they're going to be very, very wrong in their assessment. Did I answer your question, Your Honor? But, counsel, that, what you've just recounted there, sounds an awful lot to me, like you're in the position of kind of poking holes in the regulator's case rather than carrying a burden of proof that every transaction was legitimate. So, and that's the point. What's wrong with that way of thinking? Yeah, I'm sorry, Judge Shepard. Let me point out that I am not here suggesting that if Judge Shelp had made, used the right legal theory, that he might not have come up with the same position. I think, I hope, that this case will be remanded in the judge, because he even said in the transaction, if this were a criminal case where the standard was X, you know, you would be found to not have violated the rules. I hope that he'll say it's Y, not Z, which is what every transaction. It does not require every transaction, Judge, and to your point, if we look at all of the evidence, in the IROBI case and in the other case, they said, we have to look at the categories. There are certain situations here where they rely heavily on, you know, comparing one store to another, one transaction to another, and if you start off with the proposition that a register receipt, a missing register receipt is enough, well then, it's doomed. I'll never be before you again. In fact, I'll never have one of these cases again, because it could never, ever be met. Your Honor, I see I'm into my rebuttal time. Are there any questions before I reserve my time? Thank you. Thank you. Good morning, Counsel. You may proceed when you're ready. May it please the Court. I'm Assistant United States Attorney Karen Schutte. I represent the appellee, the United States of America. There was overwhelming evidence presented at trial that Euclid Market engaged in the trafficking of food stamps as charged by the USDA. In its post-trial findings of fact and conclusions of law, the District Court found ample evidence to support the USDA's trafficking finding. Based on these factual findings made by the District Court, which Euclid Market is not challenging in this appeal, this Court must affirm the judgment of the District Court in favor of the United States under any of the burdens of proof advocated by the parties in this case. Nonetheless, the District Court correctly required Euclid Market to bear the burden of proof, as it was the party seeking relief and required Euclid Market to prove by a preponderance of the evidence that the USDA's finding was invalid, which included accounting for every suspicious transaction. Counsel, let me ask you, doesn't the every transaction standard effectively exclude circumstantial evidence and demand that only direct evidence be offered to meet the burden of proof? No, Your Honor. The inquiry using the every transaction standard is going to be highly fact-specific. It will depend on the case, but that standard could be met using circumstantial evidence. The statute that allows the USDA to disqualify a store based on a finding of trafficking allows the USDA to make that decision based on different types of investigations and different types of evidence. And likewise, a store can prove the legitimacy of its charged transactions in a variety of ways. Can you give an example of how Euclid Market could have done so here with circumstantial evidence, given what the District Court required? Yes, Your Honor. The District Court could have presented more cash register receipts. It could have presented... Couldn't have been direct evidence? I'm sorry, Your Honor? How is that circumstantial evidence? It's circumstantial because it does not, in and of itself, prove a legitimate transaction, but it could prove it along with testimony from a store owner, a manager. If there was a price list to compare those cash register receipts to, so that the court could see what was purchased, that would have been helpful. The District Court seemed to take issue with the fact that the cash register receipts that Euclid Market did provide, which only accounted for some of the transactions, that the receipts didn't have any indication as to what type of item was purchased. And there was no price list for the District Court to look at to compare to the cash register receipt to see what was there. So there are a few District Court cases where, at trial, the District Court has determined that the agency's finding was invalid. And the Pena case, Pena, from the Eastern District of Arkansas, is one of those. And that was based on an undercover investigation. The District Court found that there were some serious credibility issues with the USDA witnesses. So it's going to be very fact-specific, but there are ways for the store to prove the legitimacy of its transactions that are charged. So just to make it clear, what is the government's position on this standard that the District Court imposed here in saying that the burden is on the market to prove every single transaction or receipt was proper, and just a failure to prove one dooms it. Is that, in your view, an accurate description of the standard here? Your Honor, the government's position is that the standard is that the store must prove, by a preponderance of the evidence, that the USDA's finding of trafficking was invalid, and that includes providing a legitimate explanation that covers every charged transaction. So it doesn't necessarily mean... So they could present evidence, I think, if I understand, and I don't want to put words in your mouth, but that they could present evidence about sort of a category of transactions that would satisfy the burden that the District Court described? The government does not believe that the categorical approach is proper, because that does allow the store to make generalizations about its customer shopping habits or its sales, but that the store needs to provide at least one legitimate explanation for all of the transactions. It could be one explanation, it could be all, and it needs to at least cover all of them. So they need to provide evidence that convinces the District Court that those charged transactions were legitimate. And as I discussed, it's going to be very fact-specific, but that could include credible testimony from the store owner or from the store manager, in combination with cash register receipts, maybe ones that actually itemize the items purchased, a price list, and in this case, none of that was present. So even though the District Court did state that a single transaction could be enough to disqualify the store here, it made its decision based on more than one transaction. The court specifically focused on the 59 transactions for which Euclid Market did not have a single cash register receipt. And the District Court must have made credibility findings about the testimony of the store manager, because the store manager took the stand and said, we've never trafficked before, all of our transactions are legitimate, and he provided generalized explanations for them. But the District Court... Well, Counsel, the other explanation is that the standard that you just articulated is actually different than the one the District Court applied. I believe that it's consistent, Your Honor. And there needs to be some flexibility for the District Courts here when they're hearing evidence, because of the fact that USDA could charge a large number of transactions. In this case, they charged 154. In some cases, they charge more than that. And if the store is able to provide a legitimate explanation for many of the transactions that are charged, but not all of them, and there is evidence that trafficking occurred in one of the transactions, then the District Court needs to be able to uphold the decision of the USDA based on that one charge transaction. The Food and Nutrition Act, Section 2021B3B, discusses the civil penalties for trafficking, and it states that permanent disqualification is appropriate even for a single transaction. So if there is evidence that trafficking occurred in one transaction, then the store should be disqualified, and the District Court needs to have that flexibility to be able to uphold the decision if that's the case. So it is going to be... Counsel, what if we decide... Let's say we were to decide that at least the way that the District Court described the approach is not sort of how you're describing it here, and that the standard maybe was erroneous. Does this need to be remanded if, in fact, the District Court applied the wrong approach to looking at the burden on the market? No, Your Honor, it does not need to be remanded. The District Court made sufficient factual findings in its written order that support any of the burden of proofs that the parties have discussed in this case. Some of the important factual findings that the District Court made, which UCLID Market did not challenge in this appeal, is that UCLID Market is a convenience store. It's not a grocery store. That it had comparable food stock to the stores that USDA compared it against. That it did not have sufficient food inventory during the review period to support its alleged SNAP transactions, and the District Court really seemed to focus on that as convincing evidence here. There's also the lack of the cash register receipts, and importantly, the District Court found that even for the transactions where there was a cash register receipt, that those receipts offered very little credibility that legitimate transactions were occurring there. Is there something to the market's argument that if he came out of the gate with a standard that required the market to prove that each and every transaction was legitimate, that it didn't really consider in full the nature and scope of the evidence that was presented? Your Honor, the District Court did consider the nature and scope of the evidence that was presented, and the District Court was not required to rule on every single piece of evidence or address every single piece of evidence in its written order. Here, the administrative record itself was 900 pages, so the District Court doesn't have to address every single statement within the administrative record, but it did cover the evidence that was presented at trial, and it heard the arguments made by counsel, it heard the evidence from the store about why the store believed that there were errors made by the USDA, and the District Court did not adopt those as findings of fact in its written order. I want to bring the Court's attention to the Urobie case, which is from the First Circuit, and in that case, the Court addressed the Congressional intent behind the passage of the Food and Nutrition Act, and the Court said that the store is in the best position to show what actually happens on its premises, and allocating the burden of the proof to the store recognizes that reality and incentivizes the shopkeepers to maintain accurate records. Counsel, in that same opinion, didn't the Court in a footnote call into question the every transaction test? The Court did seem to be skeptical of a hardline rule that would require stores to always prove every single transaction by preponderance of the evidence, but as I've discussed, that's not the standard that the government is advocating for. When we look at the Court's opinion in Urobie, it performed an analysis that is more of a holistic approach, which is what the District Court did here and which the government believes was proper, and that is to analyze the arguments that the store made and to not accept generalizations. That's the problem with allowing a store to make these categorical type arguments or to not address the legitimacy of all the transactions. They can claim it's their chicken wing sales that account for these sales that are significantly higher than comparable stores within the same area. Counsel, I have a question. Oh, I'm sorry. Go ahead. I'm sorry, Judge Shepard. Well, just a quick question. I've heard you mention, and I read in the briefs, the discussion about, as a factual matter, that the government contends that the store did not carry enough inventory to support the sales. That's sort of a, that's my generalization of it. And what, can you kind of dig down into that a little bit and explain how that was arrived at, number one, and then how it bears on this question? Yes, Your Honor. During the administrative proceeding and even before the actual disqualification, Euclid Market submitted invoices to the USDA showing what kind of food stock it had during this review period. And the USDA employee who performed this investigation looked at all those invoices, and they're hundreds of pages, and categorized them to see what items listed in those invoices are SNAP-eligible, and then totaled those to look at how much food they had at that time. He also reached out to Euclid Market to find out what their markup was because stores need to make money, so they don't sell at cost. They have a markup. And asked them, so asked what their markup was, applied that markup to the inventory to get a total, and then compared that total to the SNAP redemption numbers that Euclid Market had for that time period. And the USDA found that the SNAP redemptions were higher than the inventory with the markup that the store had. So Euclid Market was claiming that it sold more than what it actually had in its store. And that is very significant. It's a very strong indicator of trafficking. So what's the implication of that? That they had false sales, that they were claiming to sell SNAP-eligible items when they weren't, because they didn't have enough food stock to actually make those sales numbers. So they were selling non-qualifying... The implication, you say, is they were selling non-SNAP-qualifying items. Correct. Or accepting cash in exchange for those. There's a specific definition of trafficking, so it would have met one of those, that they were accepting some other kind of goods or cash in exchange for those. And there was a back and forth at the trial, too, where the manager of the store during trial all of a sudden claimed that the markup was actually higher than what he reported to the USDA and what he testified to in his deposition. And the USDA employee that did the investigation was able to recalculate, and even using the higher markup of 40%, still found that the SNAP sales exceeded the food stock that was in the store. The district court adopted that finding in its factual findings and referenced that as one of the reasons why the USDA's decision was not deemed to be invalid by the store. All right. Judge Kelley? Yeah, and actually this is a follow-up really to your question, Judge Shepard. Are you talking, counsel, about some of the findings in footnote 4 of the district court's opinion, where it talks about that it didn't have the inventory and the markup and things? Well, there, as I read it, the court found that substantial evidence supported those findings. That's different than a preponderance of the evidence, isn't it? Your Honor, I believe that the district court intended substantial evidence to mean the plain meaning. But I agree that the APA and Social Security Administration review cases do use the term substantial evidence, and in that context, it's less than preponderance of evidence. But here, there's no reason to believe that the district court was using a standard from those cases when this is not an APA review, it's not a Social Security Administration case. So substantial evidence in the context of the court's opinion and the footnote indicates a large amount of evidence, ample evidence, to support the finding. And, Your Honor, I see I'm out of time. May I take a moment to conclude? All right. Are there any other... Judge Ross? Judge Kelly, any other questions of counsel? All right. Go ahead and wrap up. Your Honors, for these reasons, the United States respectfully asks this court to affirm the district court's judgment. Thank you. Thank you very much. All right. I hope... Step back just a second and let... Yeah. Thank you. You may proceed. Thank you, Your Honors. A couple of quick points, Your Honors. The government standard has changed since it wrote its findings of fact and conclusions of law. If you look at the proposed findings of fact, which is in the government's appendix, you will see that they absolutely advocated for the every transaction standard. It is only now, on appeal, that they have backed off that and are trying to work in based on the fact that the judge followed what they suggested. They followed... It followed that line of cases and now it would like to say, well, but... So I encourage you to take a look at that. The... It is impossible for this court to know what the judge considered and didn't consider. And as this court has said repeatedly, it is prudent. It is the correct course of action. It is the only way that justice will be served to know that the court is applying the correct standard. Again, the court may find that the Euclid market traffic... I don't think it will because they did not traffic. But we have to apply the same standard. And as I put, the Corrado v. Ashcroft case, it says, when the BIA, Board of Immigration Appeals, applies an incorrect legal standard, the proper remedy typically is to remand the case to the agency for further consideration in light of the correct standard. In the United States case, or I'm sorry, in Ray Allers, under these circumstances, it is appropriate to remand the case so the findings may be made applying the correct legal standard. I just think, at this point, it is impossible, given what the judge said, right out of the box, this is the standard I am applying. Whether or not he touched on some other issues, we just don't know whether or not he did so as a matter of dicta, as a matter of explanation, or whether it was as a result of substantive legal analysis. And I don't think that, given the gravity, especially for this particular store, that we should assume anything about the court's opinion. I want to talk about the register receipts. They keep making a big deal of these. And let me assure you that I've heard from the USDA that once you give them all the register receipts, they are then going to say, yeah, but you could have taken those register receipts and just plugged in any number. There's nothing magical about the register receipts. Sometimes, in here, they were given to the USDA and not returned. They are one piece of evidence, along with all the other evidence that is there, the testimony. There was testimony from plenty of customers who said, we do the things that they are saying are trafficking. We buy large amounts of product. We come to the store many times a day. And that's all part of the evidence. In terms of the inventory calculation, Your Honor, I couldn't go through it right now even if I had 30 minutes with you. But if you will go to the proposed findings of fact and conclusions of law presented by Euclid Market that are in the appendix, I walked through, Your Honor, why that is an incorrect analysis, where they were flawed, how they use partial months, and they are very specific, and their calculation is wrong. So if you will look at that in Euclid Market's proposed findings of fact and conclusions of law. That's all I have, Your Honors. Thank you very much. What I would ask the Court is to remand this case back to Judge Shelp, let him make a determination using the correct legal standard, and I thank you for your time. All right. Thank you, Counsel. We appreciate your arguments this morning. And the case is submitted. And, Counsel, you may stand aside.